**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

COMMONWEALTH OF PENNSYLVANIA : 
DEPARTMENT OF HUMAN SERVICES, : 
    Plaintiff                 :      **Civil Action No. 1:16-CV-194**
                             : 
    v.                       :      **(Judge Kane)**
                             : 
U.S. DEPARTMENT OF HEALTH AND : 
HUMAN SERVICES, et al.,        : 
    Defendants            : 
                             :

## MEMORANDUM

Before the Court are cross-motions for summary judgment in this Administrative Procedure Act challenge to decisions of the Departmental Appeals Board ("DAB"), of the United States Department of Health and Human Services ("HHS"). The Commonwealth of Pennsylvania Department of Human Services ("Pennsylvania" or "the Commonwealth"), challenges the decisions by DAB upholding the HHS Secretary's decision to disallow approximately $14.5 million in Medicaid federal financial participation ("FFP") related to Pennsylvania's Medical Assistance Transportation Program ("MATP"), and approximately $25.7 million in FFP related to Pennsylvania's Medical Assistance Aging Waiver ("Aging Waiver").[1] Specifically, Pennsylvania challenges the DAB's findings that Pennsylvania (1) failed to show that all administrative costs claimed in connection with the MATP and Aging

---

[1] Pennsylvania's appeal of DAB Decision No. 2669, related to the MATP FFP disallowance, was filed on February 4, 2016 and docketed at 16-cv-194. Pennsylvania's appeal of DAB Decision No. 2653, related to the Aging Waiver FFP disallowance, was filed on April 20, 2016 and docketed at 16-cv-661. By Order dated June 3, 2016 (Doc. No. 11), the Court granted the parties' Joint Motion to Consolidate Cases (Doc. No. 10), resulting in both appeals now being docketed together at case number 16-cv-194.

Waiver were properly allocated to Medicaid, and (2) failed to show that the costs were claimed in accordance with an approved public assistance cost allocation plan.  Upon careful review of the administrative records and the parties' briefs, together with the applicable law, the Court finds that the DAB's decisions upholding the disallowances were not arbitrary or capricious.  Therefore, the Court will affirm the DAB's decisions and grant summary judgment in favor of Defendants.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Medicaid provides "joint federal and state funding of medical care for individuals who cannot afford to pay their own medical costs." Arkansas Dep't of Health and Human Servs. v. Ahlborn, 547 U.S. 268, 275 (2006).  It was enacted in 1965 as Title XIX of the Social Security Act, as added, 79 Stat. 343, 42 U.S.C. § 1396 et seq. (2000 ed. and Supp. III).  Id.  States are not required to participate in Medicaid, yet all do.  Id.  "The program is a cooperative one; the Federal Government pays between 50% and 83% of the costs the state incurs for patient care, and, in return, the state pays its portion of the costs and complies with certain statutory requirements for making eligibility determinations, collecting and maintaining information, and administering the program."  Id. (citing 42 U.S.C. § 1396a); see also Children's Seashore House v. Waldman, 197 F.3d 654, 655-56 (3d Cir. 1999).  Medicaid is administered by the HHS

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts in response to the numbered paragraphs in the moving party's statement, identifying genuine issues to be tried.  Id.  The following factual background is largely taken from the parties' statements of material facts and their responses thereto (Doc. Nos. 19, 27, 24 and 29).  The parties' statements of material facts contain specific citations to the respective  administrative records at each numbered paragraph.

Secretary, who in turn has delegated his authority to regional Centers for Medicare and Medicaid Services ("CMS"). <u>Ahlborn</u>, 547 U.S. at 275. Under Medicaid, the federal government reimburses states for part of its costs for both "medical assistance" (<u>i.e.</u>, medical care and services), and for "the proper and efficient administration" of the Medicaid program. <u>See</u> 42 U.S.C. §§ 1396b(a)(1), 1396d(a), 1396b(a)(7).

Pursuant to statute, in order to participate in Medicaid, each state must develop a state plan ("Medicaid State Plan"), for medical assistance that details the services the state intends to provide to its Medicaid beneficiaries, and how the state will pay for those services. (Doc. No. 29 ¶ 9.) Once CMS approves the plan, the state may claim the federal share for services identified in the Medicaid State Plan. (<u>Id.</u> ¶ 10.)[3]

In order to claim administrative costs incurred by a state agency operating a Medicaid program, pursuant to regulation, a state must also have an approved public assistance cost allocation plan ("PACAP"). (<u>Id.</u> ¶ 4.) The regulations require that states claim "FFP for costs associated with a program only in accordance with its approved" PACAP. (DAB MATP Op., Doc. No. 12-1 at 2.) One purpose of a PACAP is to ensure that each Medicaid program operated by Pennsylvania bears only its fair share of administrative costs, especially those costs that

---

[3] The parties dispute whether Pennsylvania's Medicaid State Plan provides that it operates a state-administered Medicaid program. While Pennsylvania admits that in 1980 when Pennsylvania was asked to report whether it or its political subdivisions administered the State's Medicaid Plan, it indicated that the state administered the program. (Doc. No. 24 ¶ 3.) However, Pennsylvania maintains that, as to the two programs at issue in this appeal, the individual counties administered the programs. (<u>Id.</u>)
Pursuant to the applicable regulations, while state-supervised public assistance programs must include local-level cost allocation plans in their PACAPs, state-administered programs are required only to have a statement in their PACAPs providing that they maintain agreements with local entities that meet certain specific requirements. <u>See</u> 45 C.F.R. §§ 95.507(b)(6), (7).

benefit multiple programs.  (Doc. No. 24 ¶ 4.)  When a state amends its PACAP, CMS typically issues conditional approvals of a PACAP or PACAP amendment through the HHS component known as Cost Allocation Services ("CAS").[4]  (Id. ¶ 6.)  Federal financial participation for costs of administration of the Medicaid program is 50%.  (Doc. No. 24 ¶ 3.)

As noted above, this case involves Pennsylvania's use of approximately $40.2 million in federal funds to pay the administrative costs of two Medicaid programs, the MATP and the Aging Waiver.  (Doc. No. 29 ¶ 1.)  The MATP provides transportation for Medicaid recipients to medical appointments.  (Id.)  The Aging Waiver assists the elderly in remaining in their homes.  (Id.)  In Pennsylvania, the Department of Human Services ("DHS"), formerly Department of Public Welfare ("DPW"), is the state agency responsible for the Medicaid program.  (Doc. No. 24 ¶ 2; Doc. No. 29 ¶ 5.)

A.    Aging Waiver

In Pennsylvania, the Aging Waiver is implemented by multiple county Area Agencies on Aging ("AAAs"), serving a broad spectrum of senior citizens, including individuals ineligible for Medicaid.  (Doc. No. 29 ¶¶ 24, 26.)  In 2010, HHS's OIG reviewed Pennsylvania's claim for administrative costs associated with the Aging Waiver for the period July 2008 through June 2009.  (Id. ¶ 27.)  In its report, the OIG found that Pennsylvania's claim included approximately

_____

[4] In April 2007, the HHS Office of Inspector General ("OIG"), issued an audit report related to Medicaid county-level mental health administrative case management costs claimed by DPW.  (Doc. No. 24 ¶ 12.)  The OIG audit report recommended that CMS "direct Pennsylvania to amend its cost allocation plan in order to claim the case management costs."  (Id. ¶ 13.)  In a response to a draft of the audit report, included with the final audit report, CMS stated that "we do not agree that Pennsylvania needs to submit a cost allocation plan amendment in order to claim administrative case management (ACM) costs." (Id. ¶ 14.)  A revised one paragraph PACAP amendment was subsequently submitted and approved by CMS, and remains in Pennsylvania's current PACAP.  (Id. ¶ 16.)

$25.7 million FFP claimed as administrative costs on behalf of the county AAAs for Aging Waiver activities. (Doc. No. 29 ¶ 28.) The OIG noted that these costs were not identified in Pennsylvania's PACAP and "may have included costs that did not benefit the Aging Waiver." (Id. ¶ 32.) The OIG recommended, among other things, that Pennsylvania "amend its cost allocation plan to identify all Aging Waiver administrative costs and include detailed allocation methodologies to enable CMS to determine if the costs are being allocated in proportion to benefits received." (Id. ¶ 33; Doc. No. 24 ¶ 23.) Subsequent to the issuance of the OIG report, CMS issued a letter of disallowance, covering the accounting period of July 1, 2008 through June 30, 2009. (Doc. No. 29 ¶ 36; Doc. No. 24 ¶ 24.)

In its disallowance letter, addressing the general requirements of a cost allocation system, CMS stated that relevant administrative costs may be claimed for Medicaid reimbursement only when they: (1) "directly relate to the administration of the Medicaid program;" (2) are included in an approved PACAP; and (3) are "supported by a system which has the capability to isolate the costs which are directly related to the support of the Medicaid program from all other costs incurred by the Agency." (Doc. No. 29 ¶ 37.) Pennsylvania admits that its PACAP lacks detail on county-level administrative costs incurred by the AAAs. (Id. ¶ 39.) Pennsylvania timely appealed the Aging Waiver disallowance to the DAB. (Doc. No. 24 ¶ 27.)

**B.    MATP**

Federal regulations authorize Medicaid reimbursement for "transportation and other related travel expenses determined to be necessary by the agency to secure medical examinations and treatment for a beneficiary," and Pennsylvania provides this transportation through the MATP. (Doc. No. 29 ¶¶ 40, 41.) During the relevant period, in 66 of 67 counties, Pennsylvania

chose to claim the expenses of the non-emergency portion of the MATP ("NEMT") as an administrative cost of Medicaid. (Id. ¶ 42.) In the remaining county, Philadelphia, Pennsylvania claimed the MATP costs as a direct medical service. (Id. ¶ 43.) In the 66 counties where Pennsylvania claimed NEMT as an administrative cost, the services were provided by the county through grant agreements executed between Pennsylvania and either the counties or, in one case, a vendor. (Id. ¶ 44.) The MATP provides transportation not only for Medicaid beneficiaries, but also for other Pennsylvanians who are eligible for state-only assistance. (Id. ¶ 45.) The MATP handbook, which DPW provided to the counties, provides a list of additional funding sources besides Medicaid, which may be available for some county transportation programs. (Id. ¶ 46.)

In or around 2012, CMS reviewed Pennsylvania's claim for Medicaid administrative costs in the MATP. (Id. ¶ 48.) Because CMS determined that Pennsylvania did not include a sufficient allocation methodology in its approved PACAP to support claiming the MATP administrative costs, CMS deferred those costs for the quarter ending June 30, 2012, and later deferred the costs for the quarter ending September 30, 2012. (Id. ¶¶ 49-50.)

The deferral letters offered Pennsylvania the opportunity to submit additional documentation, but did not specify the exact nature of that documentation. (Id. ¶ 51.) Ultimately, CMS disallowed approximately $14.5 million in FFP that Pennsylvania had claimed for MATP administrative costs for the two quarters at issue because it stated that Pennsylvania did not "have an approved CAP on file with the Department of Health and Human Services that meets regulatory requirements," as Pennsylvania's PACAP "contain[ed] no detail on county administrative costs." (Id. ¶¶ 52, 53.) Pennsylvania was aware that it was responsible for ensuring that any costs which the local entities passed on to Pennsylvania (and which

Pennsylvania in turn passed on to CMS), were allocated in accordance with federal cost principles. (Id. ¶ 55.) Pennsylvania timely appealed the MATP disallowance to the DAB. (Doc. No. 24 ¶ 36.)

###    C.    Appeals to the DAB

The DAB is designed to provide a "fair, impartial, quick and flexible" appeal process, with procedures designed to be "simple enough that a grantee need not feel it must have an attorney." (Doc. No. 24 ¶ 39 (citations omitted).) Regarding the availability of discovery in connection with a DAB appeal, regulations provide that the Board may permit discovery if it finds it appropriate to do so. See 45 C.F.R. § 16.9 ("The Board may, at the time it acknowledges an appeal or at any appropriate later point, request additional documents or information . . . and take such other steps as the Board determines appropriate to develop a prompt, sound decision"). The DAB's Appellate Division Practice Manual[5] provides:

> [w]e do not have procedures that specifically provide for formal discovery. This reflects the intention that processes before the Board be relatively informal and based on cooperation between the parties, as much as possible, with the Board facilitating.

(Doc. No. 24 ¶ 40.)

In both the Aging Waiver and MATP cases, Pennsylvania requested the opportunity to develop the record regarding whether HHS changed its interpretation of the HHS cost allocation regulations. (Id. ¶ 42.) In the MATP appeal, the request was made six days after Pennsylvania filed its reply brief. (Id.) The DAB denied the requests in both cases. (Id.)

The DAB issued its decision on the Aging Waiver appeal on September 2, 2015, and on

---

[5] The manual is available at
http://www.hhs.gov/dab/divisions/appellate/practicemanual/manual.html.

the MATP appeal on December 11, 2015. (Id. ¶ 44.) In the Aging Waiver decision, the DAB first concluded that Pennsylvania failed to meet its basic requirement to demonstrate that all administrative costs claimed are properly allocated to Medicaid, and further, that Pennsylvania failed to demonstrate that the costs at issue were claimed in accordance with an approved PACAP. (DAB Aging Waiver Op., Doc. No. 16 at 16-18.) The DAB also found that case management costs that are claimed as administrative costs must be included in Pennsylvania's PACAP, and determined that Pennsylvania's remaining arguments in favor of overturning the disallowance were unpersuasive, ultimately concluding that "Pennsylvania has not shown that the disputed costs were properly allocated to Medicaid because it has not disclosed any methodology for allocating them in accordance with applicable cost principles and has not demonstrated that they were claimed in accordance with an approved PACAP," and therefore, it upheld the relevant disallowance in full. (Id. at 23-29, 8.)

In the MATP decision, the DAB reached the same conclusion for similar reasons, finding that Pennsylvania failed to meet its basic responsibility to demonstrate that all administrative costs claimed are properly allocated to Medicaid. (DAB MATP Op., Doc. No. 12-1 at 1.) In making this finding, the DAB determined that Pennsylvania failed to sustain its burden of showing proper allocation of administrative costs pursuant to an approved methodology. (Id. at 6-12.) The DAB also found that Pennsylvania had adequate notice of the need to explain its methodology, and a full opportunity to do so, denying Pennsylvania's request for record development regarding CMS's historical treatment of the administrative costs at issue. (Id. at 12-16.) Further, the DAB found unpersuasive Pennsylvania's argument that the costs claimed as administrative costs in connection with the MATP could properly have been claimed as direct

services costs instead, and therefore, did not require allocation. (Id. at 16-20.) As it did with regard to the Aging Waiver, the DAB found unpersuasive Pennsylvania's additional arguments in favor of overturning the disallowance of MATP administrative costs, and therefore, it upheld the relevant disallowance in full. (Id. at 21-25.)

Pennsylvania appealed the MATP decision to this Court on February 4, 2016. (Doc. No. 24 ¶ 45.) Pennsylvania requested reconsideration from the DAB in the Aging Waiver case, which it denied on March 24, 2016, resulting in Pennsylvania's appeal of the Aging Waiver decision to this Court on April 20, 2016. (Id. ¶ 46.) As noted above, the Court subsequently granted the parties' joint motion to consolidate the cases, and the appeals were briefed together. In this litigation, Pennsylvania challenges both decisions of the DAB as arbitrary or capricious and a denial of administrative due process. Both parties seek summary judgment in their favor.

## II.    STANDARD OF REVIEW

The Court may resolve claims that do not present a "genuine dispute as to any material fact" through summary adjudication. Fed. R. Civ. P. 56(a). Courts may resolve cross-motions for summary judgment concurrently. See Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008); see also Johnson v. Fed. Express Corp., 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A Charles Alan Wright et al., Federal Practice and Procedure § 2720 (3d ed. 2015).

The cross-motions here seek judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and summary judgment is the appropriate "mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." La. Forestry Ass'n, Inc. v. Solis, 889 F. Supp. 2d 711, 720 (E.D. Pa. 2012) (quoting Sierra Club v. Mainella, 459 F. Supp. 2d 76, 90 (D.

D.D.C. 2006)), aff'd sub nom. La. Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Labor, 745 F.3d 653 (3d Cir. 2014). The usual summary judgment standard does not apply. Uddin v. Mayorkas, 862 F. Supp. 2d 391, 399 (E.D. Pa. 2012) (quoting UPMC Mercy v. Sebelius, 793 F. Supp. 2d 62, 67 (D.D.C. 2011)). Rather, the Court applies the APA standard of review, under which a reviewing court shall set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or is conducted "without observance of procedure required by law . . . ." 5 U.S.C. § 706(2)(A) & (D); Chao v. Roy's Constr., Inc., 517 F.3d 180, 186 (3d Cir. 2008).

Pursuant to this narrow standard of review, the Court considers "whether the agency 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action,' while being careful 'not to substitute [its] judgment for that of the agency.'" Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs., 730 F.3d 291, 305 (3d Cir. 2013) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983). While a reviewing court "'may not supply a reasoned basis for the agency's action that the agency itself has not given,' it may nevertheless 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" Gardner v. Grandolsky, 585 F.3d 786, 790 (3d Cir. 2009) (citation omitted). This "broad deference is particularly appropriate in contexts that involve a complex and highly technical regulatory program," such as Medicaid. See Albert Einstein Med. Ctr. v. Sebelius, 566 F.3d 368, 373 (3d Cir. 2009) (citation and internal quotation marks omitted). "A court may conclude that a regulation is arbitrary and capricious only if the agency relied on facts other than those intended by Congress, did not consider an important aspect of the issue confronting the agency, provided

an explanation for its decision which runs counter to the evidence before the agency, or is entirely implausible." Gardner, 585 F.3d at 790 (citation and internal quotation marks omitted). "Reversal is appropriate only where the administrative action is irrational or not based on relevant factors." NVE, Inc. v. Dep't of Health and Human Servs., 436 F.3d 182, 190 (3d Cir. 2006) (citation omitted).

## III.    DISCUSSION

Defendants maintain that the DAB's decisions upholding the relevant disallowances were not arbitrary or capricious and are supported by substantial evidence, justifying the entry of summary judgment in their favor. (Doc. No. 28 at 21-26.) Pennsylvania asserts four arguments in support of its position that the DAB's decisions were arbitrary or capricious and an abuse of discretion justifying the entry of summary judgment in its favor. Two of Pennsylvania's arguments directly challenge the merits of DAB's decisions affirming the disallowances, and two challenge the development of the record upon which the DAB based its decisions.

As to the merits, Pennsylvania argues first that the DAB's decisions upholding the disallowances were arbitrary or capricious because CMS acted contrary to agency-wide policy in connection with its disallowance of the relevant costs by not affording Pennsylvania the opportunity to amend its PACAP prior to issuing disallowance letters. (Doc. No. 20 at 22-26.) Next, Pennsylvania argues that the DAB erred in concluding that costs of case management and transportation services provided directly to clients were subject to inclusion in the State's PACAP, because Pennsylvania maintains that "payments for goods and services provided directly to program recipients" are excluded from the scope of PACAP cost allocation procedures. (Id. at 26-29.)

As to the DAB's record development, Pennsylvania argues that: (1) the DAB erred in refusing to allow for development of the record on the issue of whether HHS changed its interpretation of the cost allocation regulations; and (2) Pennsylvania lacked notice that the county-level cost allocation methodology was before the DAB for decision. (Id. at 29-37.) The Court first addresses Defendants' arguments in support of the DAB's decisions upholding the disallowances, and then discusses Pennsylvania's specific challenges to the decisions.

## A.    Defendants' Arguments in Support of the DAB's Decisions

Defendants maintain that both of the DAB's independent grounds for upholding the disallowances are supported by substantial evidence in the record, and are not arbitrary or capricious. The Court reviews each ground in turn.

1.    <u>Pennsylvania's Failure to Demonstrate that Administrative Costs Claimed are Properly Allocable to Medicaid</u>

In its Aging Waiver decision, the DAB began by articulating the essential requirement of a State PACAP: "that the state must be able to document that it has and follows a proper methodology for equitably allocating all administrative costs." (DAB Aging Waiver Op., Doc. No. 16 at 16.) The DAB explained that cost allocation is required based on the "core concept . . . that a federal program may not be charged with any costs of activities from which that program does not benefit – and that when multiple programs receive some benefit from an activity, the costs of that activity should be shared in a manner that fairly reflects the relative degree to which each benefits." (Id.) Pennsylvania has not disputed that the county entities operating the Aging Waiver and MATP administered a number of programs, and that their administrative costs had to be allocated among various funding sources. (Doc. No. 29 ¶¶ 26, 30-31, 45-46, 58.) The DAB noted that the regulations place the burden of developing an allocation methodology and

12

documenting compliance with an allocation methodology on the States.  See 45 C.F.R. § 95.507(a).

The Board found that despite Pennsylvania's admission that its agreement with the AAAs regarding the Aging Waiver required the AAAs to allocate costs in accordance with federal cost principles, and limited the local entities to claiming only for costs incurred in connection with the Aging Waiver, (see Doc. No. 29 ¶ 58), the Board could not discern from the record "an explanation of how Pennsylvania determines what share of the case management and other administrative costs that the AAAs incur are properly allocated to the Aging Waiver."  (DAB Aging Waiver Op., Doc. No. 16 at 17.)  The DAB determined that:

> Pennsylvania has offered no explanation of what procedure or methodology was applied to determine which activities of the AAAs would be charged to the Aging Waiver and to what extent.  Nor has Pennsylvania explained how the State agency confirmed that any such procedure or methodology was actually implemented by the AAAs.

(Id.)[6]  Accordingly, in both the Aging Waiver and MATP appeals, the DAB found that Pennsylvania's basic failure to explain its allocation methodology regarding administrative costs charged to the Medicaid program was sufficient to uphold the disallowances.  (Id.; DAB MATP Op., Doc. No. 12-1 at 8.)  This is so because, as the DAB noted, even where the states delegate administration to county agencies, it is the state's responsibility to prove that costs are properly allocated.  Pennsylvania offered no evidence to refute the conclusion that it failed to do so. Instead, it argues to the Court that it "lacked fair notice that it was expected to demonstrate to the

---

[6] The DAB made similar findings with regard to the MATP.  See DAB MATP Op., Doc. No. 12-1 at 8 ("Pennsylvania . . . cannot, and does not contend that the administrative costs of the counties' transportation programs could properly be charged entirely to Medicaid. . . . Pennsylvania had to demonstrate in this appeal that some reasonable methodology was used to allocate MATP administrative costs.  Pennsylvania has remained unwilling or unable to do so").

DAB how the county-level costs were actually allocated," referring the Court to its arguments supporting one of its record-based challenges to the DAB's decisions. (Doc. No. 30 at 29.)[7]

> 2. Pennsylvania Failed to Show that the Costs at Issue Were Claimed in Accordance with an Approved PACAP

In both the Aging Waiver and MATP decisions, the DAB articulated a second, independent basis for upholding the disallowances – specifically, that Pennsylvania failed to fulfill the requirements of either 45 C.F.R. § 95.507(a) or §§ 95.507(b)(1)-(4) regarding the content of its PACAP. First, as to § 95.507(a), the Board noted that a PACAP must: "describe the procedures used to identify, measure, and allocate all costs to each of the programs operated by the State agency;" "[c]onform to the accounting principles and standards prescribed in OMB Circular A-87;" and "[c]ontain sufficient information in such detail to permit [HHS] to make an informed judgment on the correctness and fairness of the State's procedures for identifying, measuring, and allocating all costs to each of the programs operated by the State agency." 45 C.F.R. § 95.507(a)(1), (2), (4). Upon review of the record in the Aging Waiver appeal, the DAB concluded that "Pennsylvania does not point to any description in the PACAP of the 'procedures used to identify, measure, and allocate' the costs of the AAAs to the Aging Waiver. Without that information, neither CAS nor CMS could reasonably be enabled to 'make an informed judgment on the correctness and fairness' of those procedures." (DAB Aging Waiver Op., Doc. No. 16 at 19.)[8]

_____

[7] As the Court views this argument to be part of Pennsylvania's second-level challenges to the DAB's decisions based on development of the record, the Court addresses this argument infra after reviewing Pennsylvania's merits-based challenges.

[8] The DAB made a similar finding in connection with the MATP appeal. (See DAB MATP Op., Doc. No. 12-1 at 9-10.)

Second, the DAB similarly found that Pennsylvania failed to comply with §§

95.507(b)(1)-(4). That regulation requires a PACAP to contain:

(1)    An organization chart showing the placement of each unit whose costs are charged to the programs operated by the State agency.

(2)    A listing of all Federal and all non-Federal programs performed, administered, or serviced by these organizational units.

(3)    A description of the activities performed by each organizational unit and, where not self-explanatory an explanation of the benefits provided to Federal programs.

(4)    The procedures used to identify, measure, and allocate all costs to each benefiting program and activity (including activities subject to different rates of FFP).

(5)    The estimated cost impact resulting from the proposed changes to a previously approved plan. . . .

(6)    A statement stipulating that wherever costs are claimed for services provided by a governmental agency outside the State agency, that they will be supported by a written agreement that includes, at a minimum (i) the specific service(s) being purchased, (ii) the basis upon which the billing will be made by the provider agency (e.g. time reports, number of homes inspected, etc.) and (iii) a stipulation that the billing will be based on the actual cost incurred. This statement would not be required if the costs involved are specifically addressed in a State-wide cost allocation plan, local-wide cost allocation plan, or an umbrella/department cost allocation plan.

(7)    If the public assistance programs are administered by local government agencies under a State supervised system, the overall State agency cost allocation plan shall also include a cost allocation plan for the local agencies. . . .

45 C.F.R. § 95.507(b).

In its decision on the Aging Waiver appeal, after noting that much of the briefing in connection with the appeal "discusses whether or not subsections 95.507(b)(6) and (7) applied and were met in this case," the DAB declined to resolve that issue because it found that "Pennsylvania did not comply with the other content requirements for the PACAP in section 95.507(b)(1)-(4) on which CMS also relied." (DAB Aging Waiver Op., Doc. No. 16 at 21.) The

DAB found that "[m]ost obviously, section 95.507(b)(4) essentially reiterates that the 'procedures used to identify, measure, and allocate <u>all</u> costs to <u>each</u> benefiting program and activity' . . . must be included in the PACAP itself," and reiterated that as "Pennsylvania has not even pointed to any identification of the costs or any description of the procedures related to the AAAs' administrative costs, . . . their omission from the PACAP is apparent." (<u>Id.</u> at 22.) For this additional reason, the DAB found that the relevant administrative costs were subject to disallowance as they "were not claimed in accordance with an approved PACAP." <u>Id.</u> at 23.[9]

In response, Pennsylvania maintains that it was permitted to use the "one sentence procedure of 45 C.F.R. § 95.507(b)(6) to claim county-level costs, and the agency changed its interpretation of the cost allocation regulations without notice or explanation," referring the Court to its arguments supporting one of its record-based challenges to the DAB's decisions. (Doc. No. 30 at 29.) The Court reads Pennsylvania's argument as essentially conceding its failure to comply with the cited regulations specifying the content of its PACAP, attacking instead CMS' refusal to permit it to rely on 45 C.F.R. § 95.507(b)(6) to claim county-level costs. In doing so, Pennsylvania argues that CMS' refusal was due to a silent change in agency policy, an issue upon which the DAB should have permitted record development.[10]

**B.      Pennsylvania's Arguments that the DAB's Decisions were Arbitrary or Capricious**

      1.      <u>The DCA Best Practices Manual</u>

---

[9] The DAB came to a similar conclusion in the MATP appeal. (<u>See</u> DAB MATP Op., Doc. No. 12-1 at 11.)

[10] As the Court view this argument to be part of Pennsylvania's second-level challenges to the DAB's decisions based on record development, the Court addresses this argument <u>infra</u> after reviewing Pennsylvania's merits-based challenges.

First, Pennsylvania argues that the DAB's decisions upholding the disallowances were arbitrary or capricious because CMS acted contrary to agency-wide policy in connection with its disallowance of the relevant costs. (Doc. No. 20 at 22.) Specifically, Pennsylvania argues that the DCA[11] Best Practices Manual precludes CMS from taking the disallowances because CAS failed to notify Pennsylvania that an amended PACAP was required to cover the Aging Waiver and MATP county-level administrative costs, and permit an amendment prior to issuing a disallowance. (Doc. No. 20 at 22-26.) The relevant provision of the "DCA Best Practices Manual for Reviewing Public Assistance Cost Allocation Plans" states as follows:

6.200-30 Failure to Amend Cost Allocation Plan

> If as a result of a review or from other information obtained it is determined that a State agency failed to amend its cost allocation plan as required by 45 CFR 95.509, the DCA will notify the State that an amended plan is required and that disallowances will be made if it is not submitted within a reasonable period of time. This notification will indicate why the plan needs to be amended, request the State to review not only the sections of the plan that are in question but also the overall plan to identify any other changes that may be required, and specify a reasonable due date for submission of the amended plan. If the amended plan or an acceptable justification for an extension is not submitted by the due date, disallowances will be made in accordance with the procedures in 6-200-50.

 (Aging Waiver A.R. 749, Doc. No. 16-10 at 44.) In essence, Pennsylvania argues that, pursuant to this provision, HHS was required to give it the opportunity to amend its PACAP to address any issues with it prior to issuing disallowance letters.

In response, Defendants maintain that the DAB correctly held that: (1) the manual does not bar disallowances but states that disallowances will be taken if required amendments are not

---

[11] As noted by Defendants, DCA has since changed its name to Cost Allocation Services (CAS), which, as noted above, is the centralized unit within HHS charged with reviewing State's PACAPs. See 45 C.F.R. § 95.507(a)(4).

submitted on a timely basis; (2) subregulatory guidance such as manual instructions cannot be read to override regulations authorizing disallowances; and (3) the manual provision relied on by Pennsylvania ultimately has no application to these appeals, as it applies only where DCA determined that a State failed to amend its cost allocation plan as required by 45 C.F.R. § 95.509, which did not happen here. (Doc. No. 28 at 26-28.)

After careful review of the briefs of the parties, the applicable law, and the administrative records, the Court is unpersuaded by Pennsylvania's arguments that the DAB's decisions were arbitrary or capricious because: (1) the manual provision was binding on HHS in this instance and required HHS to provide Pennsylvania the opportunity to amend its PACAP before taking disallowances; and (2) even it if was not binding on HHS, HHS was required (but failed) to explain why it did not follow the guidance of the manual provision here.

In its Aging Waiver decision, the DAB first noted that the cited manual provision does not preclude the disallowance of administrative costs claimed by a State without inclusion in its PACAP, but rather ultimately "warns states that failure to amend when required will result in disallowances." (DAB Aging Waiver Op., Doc. No. 16 at 26.) The DAB further stated that "[i]nstructions in a manual to take disallowances if a state does not timely amend a plan cannot be read to override regulations authorizing disallowances for failure to claim costs in accord with an approved cost allocation plan, especially since the manual provisions do not have the force of law that applies to regulations." (Id.)[12]

---

[12] Assuming the potential relevance of the manual provision to this dispute, the Court finds the authority relied on by Pennsylvania to support its position as to the binding nature of such language unavailing. Pennsylvania cites to United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954), which held that agencies must comply with their own regulations, but the case does not address compliance with subregulatory guidance such as the Best Practices

Ultimately, the Court is unpersuaded that Pennsylvania has demonstrated that the DAB's position that the referenced manual provision is not applicable to these appeals was arbitrary or capricious. By its terms, the provision applies where DCA "determines that a State agency failed to amend its cost allocation plan as required by 45 C.F.R. 95.509 . . . ." (Aging Waiver A.R. 749, Doc. No. 16-10 at 44.) That regulatory provision instructs that States must "promptly amend" their PACAPs when specific events occur:

> (1) [t]he procedures shown in the existing cost allocation plan become outdated because of organizational changes, changes in Federal law or regulations, or significant changes in program levels, affecting the validity of the approved cost allocation procedures. (2) [a] material defect is discovered in the cost allocation plan by the Director, DCA or the State. (3) [t]he State plan for public assistance programs is amended so as to affect the allocation of costs. (4) [o]ther changes occur which make the allocation basis or procedures in the approval cost allocation plan invalid.

45 C.F.R. § 95.509(a). Pennsylvania argues to this Court that the cost allocation issues identified as to its PACAP amounted to a "material defect" in the PACAP within the meaning of 45 C.F.R.

---

Manual. Pennsylvania relies on two additional cases – Padula v. Webster, 822 F.2d 97, 100 (D.C. Cir. 1987) and Chiron Corp. & PerSeptive Biosystems v. National Transp. Safety Board, 198 F.3d 935, 943-44 (D.C. Cir. 1999) – which similarly do not provide the support that Pennsylvania seeks for its position, as in both cases, the courts held that the sub-regulatory guidance at issue was not binding on the government because the government did not intend it to be so. See Padula, 822 F.2d at 368 (holding that "an agency pronouncement is transformed into a binding norm if so intended by the agency"). The DCA (now CAS) Best Practices Manual contains no expression of intention to bind DCA, providing that it "was developed to assist the Division of Cost Allocation (DCA) staff in their review of public assistance (PA) cost allocation plans and plan amendments . . . . and presents DCA best practices that should be followed during the review." (Doc. No. 16-8 at 64.) Further, the manual provides that "sound judgment must be exercised in adapting the steps of the manual to each negotiation." (Id. at 66.) Pennsylvania's citation to Farrell v. Department of Interior, 314 F.3d 584 (Fed. Cir. 2002) likewise fails to support its position that the manual language is binding. In that case, the court, in addressing the binding nature of an agency "Guide," found that the Guide's statement (similar to the one contained in the manual here) that it served to provide "a general framework within which supervisors may exercise sound judgment in dealing with particular circumstances," supported its conclusion that the "Guide" was not binding on the agency. Id. at 592.

§ 95.509(a)(2), which triggered the potential application of the manual provision, maintaining that "[i]f the HHS cost allocation regulations required the kind of extensive detail on county-level costs in the PACAP that CMS and the DAB now say is required, then the omission of such detail can only be described as a 'material defect' within the meaning of 45 C.F.R. [§] 95.509(a)(2) . . . . call[ing] into play the notice and opportunity to correct procedures found on page 94 of the Manual."  (Doc. No. 30 at 7.)  However, significantly, the DAB noted in its decision on the Aging Waiver appeal that neither party alleged that any of the events listed in 45 C.F.R. § 95.509 occurred here.  (DAB Aging Waiver Op., Doc. No. 16 at 26.)  Moreover, the DAB found that:

> States are not obliged to claim all possible administrative costs, but are required to include all such costs they seek to claim in the PACAP with the required information about allocation methodology.  Pennsylvania's failure to include the administrative costs at issue in its PACAP did not make the PACAP defective. Instead, the failure meant that Pennsylvania could not properly allocate the costs to Medicaid.

(Id.)  Further, in connection with its decision in the MATP appeal, the DAB found that "CMS has not argued, and the Board has not found, that Pennsylvania's PACAP is materially incomplete, but rather that the PACAP does not inform CAS or CMS of an intention or methodology to allocate county costs of running the MATP to Medicaid."  (DAB MATP Op., Doc. No. 12-1 at 22 n.10.)  Pennsylvania clearly would have preferred that HHS apply the manual provision in connection with the challenged MATP and Aging Waiver administrative costs to the extent that such application would  have afforded it the opportunity to amend its PACAP prior to the issuance of disallowance letters.  However, Pennsylvania has not demonstrated that the DAB's finding that the Best Practices Manual was inapplicable to the appeals at issue, and therefore, did not preclude the taking of disallowances here prior to offering

Pennsylvania the opportunity to amend its PACAP, was arbitrary or capricious. The Court next addresses Pennsylvania's argument that the DAB decisions were arbitrary or capricious in concluding that costs of case management and transportation services provided directly to clients (but claimed as administrative costs) were subject to inclusion in the State's PACAP.

2.     <u>Disallowed Administrative Costs as Direct Services Costs</u>

Pennsylvania argues that the DAB erred in concluding that the portion of the disallowed costs consisting of costs of case management and transportation services provided directly to clients were subject to inclusion in the State's PACAP because they were claimed as Medicaid administrative costs, because in Pennsylvania's view, both OMB Circular A-87 and 45 C.F.R. § 95.505 exclude "payments for goods and services provided directly to program recipients" from the scope of cost allocation procedures. (Doc. No. 20 at 26-29.)

In response, Defendants maintain that the DAB correctly found that as "Pennsylvania chose to characterize all the costs at issue as administrative in nature in its claims and did not treat them as direct services to individual recipients," (DAB MATP Op., Doc. No. 12-1 at 20), it "cannot now, having claimed the . . . case management costs as administrative, assert that they are actually direct medical services to justify omitting them from its PACAP." (<u>Id.</u> at 17.) Defendants further maintain that Pennsylvania's argument on this point ignores the fact that there is some overlap between administrative and direct service costs, as some case management activities "may be claimed at either the administrative or the service match rate." (MATP A.R. 701, Doc. No. 12-9 at 90.)

After careful review of the briefs of the parties, the applicable law, and the administrative records, the Court is unpersuaded by Pennsylvania's argument that the DAB's decision on this

point was arbitrary or capricious.  CMS's State Medicaid Manual ("SMM")[13] instructs States

that where "an activity may qualify as either a Medicaid service or an administrative activity,"

the State is permitted to "classify the function in either category."  (MATP A.R. 701, Doc. No.

12-9 at 90.)[14]    However, the SMM also instructs that "[t]his decision must be made prior to

claiming FFP because of the different rules which apply to each type of function under the

Medicaid program." (Id.)  As Defendants point out, "[a]ccountability for case management

provided as a direct medical service is maintained through the State Medicaid Plan," while

"accountability for case management activities [claimed as administrative costs] is maintained by

including the costs in 'a cost allocation plan approved by' CMS."  (Doc. No. 28 at 30 (citation

omitted).)  As to case management costs claimed as administrative costs, the SMM instructs that

such costs can only be claimed as administrative where "[d]ocumentation maintained in support

of the claim is sufficiently detailed to permit [CMS][15] to determine whether the activities are

necessary for the proper and efficient administration of the State plan . . . ." (MATP A.R. 791,

Doc. No. 12-9 at 91.)

The DAB held that Pennsylvania essentially "seeks to create a third category of Medicaid

costs which may be claimed as administrative but which are nevertheless not . . . administration

---

[13] The State Medicaid Manual "serves as the official HHS interpretation" of the Medicaid law and regulations.  Pennsylvania Dept. Of Public Welfare v. U.S. Dept. of Health and Human Servs., 647 F.3d 506, 509 (3d Cir. 2011).  It is available at https://www.cms.gov/Regulations-and-Guidance/guidance/Manuals/Paper-Based-Manuals-Items/CMS02197.html.

[14] The DAB noted that Pennsylvania is well aware of this fact because, with regard to the MATP, "it chose to claim Philadelphia County's transportation program costs as medical service expenditures and those of the other 66 counties as administrative expenses."  (DAB MATP Op., Doc. No. 12-1 at 16.)

[15] CMS was previously known as the Health Care Financing Administration ("HCFA").

costs for purposes of the requirement that such costs must be fairly allocable to Medicaid."
(DAB MATP Op., Doc. No. 12-1 at 17).) Here Pennsylvania admitted that it claimed the costs
at issue as administrative costs. (Doc. No. 29 ¶ 6.) It further admitted that "none of the
disallowed expenses were claimed as service costs." (Id. ¶¶ 18-19.) The Court is persuaded
that, as the DAB held, whether the costs were in fact for services or administration, in light of
Pennsylvania's decision to claim them as administrative costs, HHS's decision to disallow them
was proper, because, as the DAB explained:

> If the State's characterization [of the costs as administrative] was accurate, the
> expenditures are State agency costs which must be allocated in order to determine
> what share was necessary for the proper and efficient administration of Medicaid
> in Pennsylvania, a determination made through the PACAP approval process. If
> the State's characterization was inaccurate, . . . we would uphold the disallowance
> of the claims because they should not have been claimed as administrative costs
> in the first place.

(DAB MATP Op., Doc. No. 12-1 at 20.) Pennsylvania has not demonstrated that the DAB's
conclusion on this point was arbitrary or capricious. The Court next addresses Pennsylvania's
arguments regarding record development before the DAB.

### 3. Record Development Before the DAB

In further challenge to the DAB's decisions, Pennsylvania asserts two arguments
regarding DAB's development of the record upon which it based its decisions.

#### a. DAB Refusal to Develop Record on Issue of Potential Silent Change in Interpretation by HHS

First, Pennsylvania argues that the DAB erred in refusing to develop the record on the
issue of whether HHS changed its interpretation of the cost allocation regulations, maintaining
that "[f]or more than two decades, DHS claimed the county-level costs of its Aging Waiver
program and MATP, and CMS routinely reimbursed the State. DHS relied on and complied with

the one paragraph statement required by 45 C.F.R. § 95.507(b)(6) in its PACAP, and CMS never

objected.  Now CMS and the DAB proclaim that procedure was improper and requires a

disallowance."  (Doc. No. 20 at 29.)  Pennsylvania argues that a 2007 internal memorandum is

"[t]he most compelling evidence of an unarticulated and unexplained change in interpretation"

by HHS, (Doc. No. 30 at 12), and that it was an abuse of discretion for DAB to refuse its request

to develop the record on this issue.  (Doc. No. 20 at 32.)

The 2007 internal memorandum referenced by Pennsylvania relates to an April 2007

HHS OIG audit report pertaining to Medicaid county-level administrative case management

costs, recommending that CMS "direct Pennsylvania to amend its cost allocation plan in order to

claim the case management costs."  (MATP A.R. 214, Doc. No. 12-4 at 14.)  In its response to

the audit report, CMS rejected the recommendation that Pennsylvania needed to submit a cost

allocation plan amendment in order to claim the relevant costs, stating:

> It is our understanding that the ACM costs are claimed under an agreement
> between the State and the Counties.  The costs incurred by the Counties under the
> Medical Assistance program are identified, measured, and allocated in accordance
> with the County's cost allocation plan and reported to the Department of Public
> Welfare.  DPW accumulates these costs for their inclusion in their quarterly
> claims for FFP under the Medical Assistance program.  The State's claiming for
> these services is in accordance with 45 CFR 95.507(b)(6), 'costs that are claimed
> for services provided by a governmental agency outside the state agency will be
> supported by a written agreement that includes, at a minimum, (i) the specific
> services being purchased, (ii) the basis upon which the billing will be made by the
> provider agency (e.g. time reports, number of homes inspected, etc.), and (iii) a
> stipulation that the billing will be based on actual cost incurred.'
>
> In addition, we [CMS] believe that it would be administratively burdensome to
> include cost allocation plans for all 67 counties in Pennsylvania as part of the
> Department of Public Welfare's (DPW) Cost Allocation Plan.

(MATP A.R. 249, Doc. No. 12-4 at 49.)

Based on this memorandum, Pennsylvania argues that the disallowances issued here due

to a lack of information in the PACAP on county-level administrative costs reflect a silent and unlawful change in HHS policy, an issue upon which it sought record development from the DAB. Pennsylvania maintains that the Court should find the DAB's refusal to permit record development on this point an abuse of discretion and remand the case to the DAB with instructions to permit development of the record on the issue of whether an unlawful change in interpretation by HHS occurred. (Doc. No. 20 at 32.)

In response, Defendants argue that Pennsylvania's position that CMS changed its interpretation of the cost allocation regulations is irrelevant to the DAB's decision, and in any event, unsupported by the evidence. (Doc. No. 28 at 31.) Defendants maintain that CMS has consistently stated that administrative costs must be claimed in accordance with an approved PACAP that includes an allocation methodology, and that Pennsylvania has not denied that its PACAP did not comply with this requirement. (Id. at 31-32.) Further, Defendants point out that the DAB noted that "CMS (and CAS) have long enforced the requirement to identify and disclose allocation methodologies for all administrative costs, as is evident from years of board jurisprudence." (DAB Aging Waiver Op., Doc. No. 16 at 28).)

With specific regard to the 2007 internal memorandum relied on by Pennsylvania in support of its arguments, Defendants maintain that the Board properly rejected Pennsylvania's reliance on the memorandum, for the following reasons: (1) it involved a state Medicaid program unrelated to the Aging Waiver or MATP; (2) because the Board's decision did "not depend on whether Pennsylvania was required to include the county CAPs with the PACAP," the memorandum's statement that requiring submission of all the county CAPs with the PACAP would be "administratively burdensome" was irrelevant to the Board's decision; (3) the author of

the memorandum was "not shown to have the authority to make policy;" and (4) the memorandum could not bind CMS or demonstrate any reliance by Pennsylvania as Pennsylvania located the memorandum more than eight years after its issuance and more than three years after the MATP costs were claimed.  (Doc. No. 28 at 33-34.)  Further, Defendants argue that even if Pennsylvania thought that, pursuant to 95 C.F.R. § 95.507(b)(6),  it only needed to refer to its agreements with the counties in its PACAP, those agreements with the counties demonstrate that Pennsylvania knew that it assumed the responsibility to maintain documentation that supported allocation of the administrative expenses.  (Id. at 36.)

Upon careful review of the DAB's decisions, the administrative records, and the briefs of the parties, the Court is unpersuaded by Pennsylvania's argument that the 2007 memorandum is prima facie evidence of a change in interpretation by HHS, such that the DAB abused its discretion in refusing record development on this issue prior to issuing its decisions upholding the disallowances.   As the DAB stated, and as discussed supra, its conclusion that Pennsylvania failed to comply with the basic requirements of § 95.507(a) and § 95.507(b)(1)-(4) was one of its bases for upholding the disallowances, and that decision did not depend on "whether Pennsylvania was required to include the county CAPs with the PACAP," (DAB MATP Op., Doc. No. 12-1 at 24), an issue of potential relevance to the applicability of §§ 95.507(b)(6) and (b)(7), and whether they were met in this case.  However, the DAB explicitly declined to resolve the issue of the applicability of §§ 95.507(b)(6) and (b)(7) here, making the memorandum irrelevant to the DAB's decisions.  (DAB Aging Waiver Op., Doc. No. 16 at 21; DAB MATP

Op., Doc. No. 12-1 at 11.)[16]  Even assuming the potential relevance of the 2007 memorandum,

as Defendants point out, if Pennsylvania thought that it only needed to refer to its agreements

with the counties in its PACAP, those agreements demonstrate that Pennsylvania knew that it

was responsible to maintain documentation supporting the allocation of administrative costs, and

Pennsylvania has not produced any such documentation in connection with these appeals.  (Doc.

No. 28 at 36.)  Accordingly, the Court finds that Pennsylvania has not demonstrated that the

DAB's decisions to deny Pennsylvania's request for further record development on the issue of a

potential silent change in HHS policy regarding cost allocation requirements was an abuse of its

discretion.[17]

> b.      Notice of Issues Before the DAB for Decision and Request for
>         Record Development Regarding the Same

In connection with its arguments regarding the record upon which the DAB based its

decisions, Pennsylvania also argues that it lacked notice that the county-level cost allocation

---

[16] In fact, Pennsylvania acknowledges that any issues regarding § 95.507(b)(6), while
extensively briefed before the DAB, were not a basis for its decision, and therefore, are "not
before the Court."  (Doc. No. 30 at 15.)

[17] In its reply brief, Pennsylvania first points out, in apparent response to Defendants'
brief, that whether it met its burden of proof to show an illegal change in interpretation before
the DAB is "not the issue before the Court.  Instead, the Court must decide whether the State
proffered enough evidence of a silent and unexplained change in course to make the DAB's
failure to conduct record development on the issue arbitrary, capricious, and an abuse of
discretion."  (Doc. No. 30 at 12.)  However, later in the same brief, Pennsylvania argues that
DAB's "conclusion in both disallowance decisions that there was no silent change in policy by
the agency runs counter to the evidence before the agency," and proceeds to list the evidence it
believes is contrary to that conclusion.  (Id. at 29-30.)  The Court assumes that, consistent with
its earlier position, and its overall framing of the issues before the Court, Pennsylvania's
argument remains that the DAB's failure to permit record development on the issue of whether a
silent change in policy occurred was an abuse of discretion in light of the evidence presented to
it, and the Court has addressed the issue accordingly.

methodology was before the DAB for decision.  (Doc. No. 20 at 32-37.)  Specifically,

Pennsylvania claims that it sufficiently explained that local entities allocated their costs through

their own local cost-allocation plans, and that nothing in the relevant disallowance letters

indicated that Pennsylvania was required to produce that documentation.  (Id. at 33.)  In

connection with the MATP appeal, Pennsylvania maintains that upon receipt of CMS's response

brief in the MATP appeal challenging its failure to provide documentation, it requested a

preliminary ruling from the DAB regarding whether it had to produce documentation on how the

counties allocated their administrative costs and if so, how it could develop the record on that

issue.  (Id. at 34-35.)  The DAB did not issue the requested preliminary ruling.  (Id. at 35.)  With

regard to the Aging Waiver appeal, upon the issuance of the DAB's decision, Pennsylvania

requested reconsideration of the decision, asserting that it lacked notice that it was being asked

to produce documentation supporting the county-level claiming methodology.  (Aging Waiver

A.R. 329-34, Doc. No. 16-3 at 63-68.)

     In response, Defendants maintain that the DAB correctly found that Pennsylvania had

adequate notice that the issue of county-level cost allocation was before the DAB for decision

pursuant to the relevant disallowance letters.  (Doc. No. 28 at 37.)  Further, Defendants maintain

that, in connection with the Aging Waiver appeal, CMS's brief to the DAB framed the issues

before the Board as "not whether the State provided sufficient detail, but the complete lack of

any mention of the disallowed costs or any method of allocating them."  (Id. at 38 (citations

omitted).)  Defendants note that the DAB concluded that CMS's brief "explicitly reminded

[Pennsylvania] at a point when it could still remedy the situation" that "claiming for any costs

that benefit multiple programs must be supported by an allocation methodology and that the

State had failed to identify such a methodology in or out of its PACAP as to the disallowed costs." (Id. (citing DAB Aging Waiver Op., Doc. No. 16 at 36-37).)   In connection with the MATP appeal, Defendants note that the DAB found that even if the disallowance letter was insufficient to provide notice, "we would find that Pennsylvania had adequate notice in the proceedings in this appeal.  CMS's response brief clearly identified the issue, and Pennsylvania had the opportunity to respond in its reply brief."  (Id. at 39 (citing DAB MATP Op., Doc. No. 12-1 at 12).)

Upon review of the DAB's decisions, the administrative records, and the briefs of the parties, the Court is unpersuaded by Pennsylvania's argument that it lacked notice that the county-level cost allocation methodology was before the DAB for decision.  As to the Aging Waiver appeal, in its decision denying Pennsylvania's request for reconsideration on this point, the DAB found that Pennsylvania should have known of its responsibility to disclose an allocation methodology, quoting the disallowance letter's explanation that administrative costs may only be claimed when "directly related to the administration of the Medicaid program," included in an approved PACAP, and "'supported by a system which has the capability to isolate the costs which are directly related to the support of the Medicaid program from all other costs incurred by the agency.'" (Aging Waiver A.R. 28, Doc. No. 16 at 35 (citations omitted).)  The Court finds that the DAB's conclusion that Pennsylvania had notice that the county-level cost allocation methodology was an issue in these proceedings was not arbitrary or capricious.  The Court's conclusion is supported by the DAB's finding that CMS in its brief reiterated Pennsylvania's failure to disclose the allocation methodology, stating that if Pennsylvania knew "'how the disallowed costs were allocated, it ha[d] not provided the information in its appeal

file.'"  (Aging Waiver A.R. 29, Doc. No. 16 at 36 (citation omitted).)

In connection with the MATP appeal, the relevant disallowance letter stated that Pennsylvania failed to claim the relevant administrative costs in accordance with an approved PACAP meeting regulatory requirements.  (MATP A.R. 28, Doc. No. 12-1 at 28.) The DAB held that "[e]ven if we considered the disallowance insufficient in itself to make clear that Pennsylvania needed to" identify its methodology for allocating county-level administrative costs, "we would find that Pennsylvania had adequate notice in the proceedings in this appeal. CMS's response brief clearly identified the issue, and Pennsylvania had the opportunity to respond in its reply brief."  (DAB MATP Op., Doc. No. 12-1 at 12.)  The Court finds that DAB's conclusion on this point was not arbitrary or capricious.

Ultimately, Pennsylvania has not demonstrated that: (1)  the DAB's conclusion in these appeals that Pennsylvania had notice that it was required to explain how county-level administrative costs were allocated, yet "failed to establish that <u>any</u> methodology at all was developed and implemented . . . to allocate which costs incurred by the counties should be charged to Medicaid," (DAB MATP Op., Doc. No. 12-1 at 14), and (2) the DAB's denial of Pennsylvania's requests for additional  record development on this issue, were arbitrary, capricious, or an abuse of discretion.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Pennsylvania's challenges to the DAB's decisions fail.  Pennsylvania has not demonstrated that the decisions of the DAB as to the MATP and Aging Waiver appeals were arbitrary or capricious, or otherwise not in accordance with law. Accordingly, the Court will grant summary judgment in favor of Defendants and affirm the

decisions of the DAB.